## JOHNSON, Commissioner, etc., v. DAMON ex rel. LEUNG FOOK YUNG.

(Circuit Court of Appeals, First Circuit. December 1, 1926.)

No. 2045.

**Aliens ⬥32(8)—Discrepancies in testimony of applicants for admission as sons of American citizen held too slight and insignificant to warrant exclusion.**

Discrepancies in testimony of applicants for admission as sons of American citizen *held* so slight and insignificant as not to authorize immigration tribunals in holding that case was fraudulent and fabricated.

Appeal from the District Court of the United States for the District of Massachusetts; James M. Morton, Jr., Judge.

Habeas corpus by Everett Flint Damon, on the relation of Leung Fook Yung and others, against John P. Johnson, United States Commissioner of Immigration. Decree for petitioner, and respondent appeals. Affirmed.

George R. Farnum, Asst. U. S. Atty., of Boston, Mass. (Harold P. Williams, U. S. Atty., of Boston, Mass., on the brief), for appellant.

Walter Bates Farr, of Boston, Mass. (Everett Flint Damon, of Boston, Mass., on the brief), for appellee.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge. This habeas corpus case presents the familiar question of the relationship of the applicants to an alleged father conceded to be an American citizen. The alleged father was Leung How, who was born in this country and died in

16 F.(2d)—5

China in 1913. The applicants are 15 and 16 years old, respectively. Leung Ping Sing, who claims to be their brother, was admitted in 1922 as the son of Leung How. The applicants, their alleged brother, and an alleged uncle—Leung Fung—all testified to the relationship.

As the court below found, the testimony of these four witnesses was consistent *on all material points*. But the immigration tribunals in effect adjudged the case fraudulent and fabricated—flat perjury.

Judge Morton, after a careful examination of the evidence, in an unpublished opinion, found that the discrepancies relied upon by the immigration tribunals were "so slight and insignificant as to afford no basis for a fair-minded tribunal to reach such a conclusion in disregard of the weighty evidence in the applicants' favor." Examination of the record drives us to the same conclusion.

This court has by repeated decisions shown its full appreciation of the very narrow limits of the jurisdiction of the courts on habeas corpus proceedings to review the decisions of the immigration tribunals. Cf. Johnson v. Kock Shing (C. C. A.) 3 F.(2d) 889; Ng Lung v. Johnson (C. C. A.) 8 F.(2d) 1020. In many cases this court has felt bound to sustain results grounded upon a finding of deliberate perjury, when the evidence in support of so serious a proposition seemed inadequate, if weighed as courts and juries are expected to weigh such evidence. But there is a limit beyond which no fact-finding tribunal can go in finding a case made up out of whole cloth. This seems to us such a case.

It falls within the rule stated by Mr. Justice Brandeis in Tisi v. Tod, 264 U. S. 131, 133, 44 S. Ct. 260, 261 (68 L. Ed. 590): "The error of an administrative tribunal may, of course, be so flagrant as to convince a court that the hearing had was not a fair one."

The same controlling principle is recognized by this court in Goon Hen Soo v. Johnson (C. C. A.) 13 F.(2d) 82: "While the discrepancies disclosed by the testimony of the witnesses relate to matters of a seemingly trivial nature, yet, we cannot say as a matter of law that they were not sufficient to justify reasonable minds in arriving at the conclusion reached by the Immigration Board." Here is a recognition that the discrepancies must be "sufficient to justify *reasonable minds*," etc.

In Chin Gim Wing v. Johnson (C. C. A.) 13 F.(2d) 124, the court said: "We have carefully examined the entire record and find

that there *was substantial evidence* upon which the decision of the immigration authorities was based. It is not our province to weigh testimony, but *to determine whether there was any substantial evidence* which would support their decision. We think there was." Conversely, if the court had found in that case that there was no "substantial evidence which would support their decision," a reverse result would have been reached.

In this case, as noted above, four witnesses (who must have known the facts, mistake was negatived) testified that these two boys were the sons of an American-born citizen, and therefore themselves American citizens. The immigration authorities grounded their finding that all four had committed gross and deliberate perjury (for that is what the finding there made amounts to, however mildly phrased), not upon discrepancies in the testimony as to the relationship, but upon trifling discrepancies in the testimony concerning the home village and the occupants of the various houses.

It is true that in many of the cases, where the only real issue was relationship, such differences in the description of the villages and the inhabitants have been held sufficient to warrant the immigration officials in reaching a conclusion that the witnesses were not to be believed. But in all those cases the villages have been small, so that, as noted above, the courts could not say that "reasonable minds" could not have reached the conclusion that the discrepancies disclosed a made-up case.

But in this case the home village had 60 to 70 houses. It is upon slight discrepancies in the description of this village that the immigration authorities relied in reaching their conclusion that these boys were not the brothers of Leung Ping Sing, who was admitted as the son of the same alleged father in 1922, and who then claimed to have as brothers these two applicants.

A fair sample of the discrepancies relied upon is found in the following excerpt from the summary of evidence made by the chairman of the Board of Special Inquiry:

"It is difficult to explain the inability of the three alleged brothers, whose home is in the third row of the village, to agree upon the number of houses in the two contiguous rows. Omitting details, it may suffice to say that each of the three brothers gives a different description of the second row. As to the fourth row, the two applicants agree, but the prior-landed brother disagrees with them."

The mind revolts against such methods of dealing with vital human rights. The decision below was right, and must be affirmed.

The decree of the District Court is affirmed.