**HANDLOVITS v. ADCOCK, District Director of Immigration and Naturalization.**

Civil Action No. 7231.

United States District Court
E. D. Michigan, S. D.

Oct. 11, 1948.

Carl W. Doozan and Ryan, Doozan & Scorsone, all of Saginaw, Mich., for petitioner.

Thomas P. Thornton, U. S. Atty., Kenneth W. Smith, Asst. U. S. Atty., and Harry Kobel, Dist. Adjudications Officer, Immigration and Naturalization Service, all of Detroit, Mich., for respondent.

LEVIN, District Judge.

In this habeas corpus proceeding the petitioner, an alien, requests the court for relief from a deportation order, dated December 19, 1945, made by the Department of Justice upon the ground that she did not have a fair hearing under the regulations of the Immigration and Naturalization Service of the Department of Justice, and also for the reason that her deportation would result in cruel and unusual hardship.

Born in Germany on April 25, 1905, the petitioner, together with a brother, was brought to the United States by their mother in August, 1906. After her mother's death in 1913 she was placed in an orphanage and was reared there.

In 1938 she was convicted of larceny from a store, committed on June 16, 1938, and sentenced to one to four years imprisonment. In 1944 she was again convicted for the crime of larceny and sentenced for a period of two to four years. These convictions are the basis for the finding by the Department that she is exposed to deportation under Sec. 19(a) of the Immigration Act of 1917, Title 8, U.S. C.A. § 155(a), being an alien, who after May 1, 1917, was sentenced more than once to imprisonment for a term of one year or more because of convictions for

crimes involving moral turpitude committed at any time after entry.

The petitioner was placed under deportation proceedings on December 21, 1944, by the issuance of a warrant for her arrest by a duly designated representative of the Attorney General of the United States. On February 8, 1945, she was accorded a hearing under the warrant of arrest at the Detroit House of Correction, Plymouth, Michigan, by a United States Immigrant Inspector.

At the hearing before this court upon the writ, the record of the hearing on the warrant was introduced and it appears that she was informed by the inspector as follows: "You are advised that at this proceeding you have the right to representation by counsel at your own expense, which counsel may be an attorney or other person of good moral character. Do you desire to be so represented?" The response was, "No."

On February 14, 1945, six days after the hearing, but before the record had been submitted to the Department for decision, the petitioner sent a letter to the inspector who conducted the hearing, from which it appears that she did not understand that she waived the presence of counsel or a friend at the hearing on the warrant. The first paragraph of the letter reads as follows:

"During our conversation of Thursday, the 8th, you mentioned about getting a lawyer. Does the Federal Government furnish the lawyer in a case of this kind, same as the state does, when the individual cannot afford one of higher prestige?" The balance of the letter clearly indicates the petitioner's complete lack of understanding of the nature of the proceedings which had been instituted against her by the Immigration and Naturalization Service.

Neither the file of the local office of the Immigration and Naturalization Service nor the file of the central office of the Service contains a record of the acknowledgement of the letter, nor is there a memorandum that any notice was taken of it. The inspector who conducted the hearing on the warrant testified before the court that following receipt of the letter, and upon his next visit to the prison to conduct hearings in other cases, he informed petitioner that the Federal Government did not provide lawyers to represent indigent persons in deportation proceedings. The petitioner denied having had such a conversation with the inspector.

■ Although the deportation of the petitioner will be tantamount to exile from a country in which she has lived since infancy to a country in which she will be a stranger, and although it might be said that whatever are her faults and virtues she is the product of our country, such circumstances cannot be considered by this court. The allegations of hardship resulting from deportation are ineffective in seeking the intervention of the courts. If the law authorizes deportation, relief from its mandate cannot be granted judicially in the absence of a showing that the hearing which resulted in the order of deportation was unfair. Soewapadji v. Wixon, 9 Cir., 157 F.2d 289, certiorari denied 329 U.S. 792, 67 S.Ct. 369, 91 L.Ed. 678.

■ The court is powerless to intervene or substitute its own judgment for that of the administrative officers if the alien was granted a fair hearing and there is evidence of probative value to support the findings of the administrative tribunal or officer. Tisi v. Tod, 264 U.S. 131, 44 S.Ct. 260, 68 L.Ed. 590. Nevertheless the court is bound to examine the proceedings to determine whether there has been that degree of fairness requisite for a legal conclusion in an administrative proceeding. In Bridges v. Wixon, 326 U.S. 135, 154, 65 S.Ct. 1443, 1452, 89 L.Ed. 2103, Mr. Justice Douglas said:

"That deportation is a penalty—at times a most serious one—cannot be doubted. Meticulous care must be exercised lest the procedure by which he is deprived of that liberty not meet the essential standards of fairness."

The regulations of the Department for the conduct of deportation hearings are found in Title 8 of the Code of Federal Regulations, Sections 95.2 and 150.6. It

is plain from a reading of the pertinent provisions[1] that it is the intent of the Department to give an alien full opportunity to obtain counsel if desired, and to arrange for a defense.

The petitioner, having been convicted on the two occasions described and having received sentences for the terms indicated, was subject to deportation under the statute; but I am not satisfied that when she answered, "No" to the question as to whether she desired to have a lawyer or a friend represent her, she understood the question. It was the duty of the examining officer to explain such an important right to a person, not in a perfunctory way but in a manner which would assure such an examining officer that the alien fully understood her rights, and his acknowledgement of the petitioner's letter in the manner related by him cannot be accepted as a satisfactory recognition of the protection the law accords a person in her plight.

It is not compliance with the requirements of a fair hearing to say that she would be subject to deportation in any event. It is conceivable that the Department of Justice, upon an appropriate presentation by legal counsel or by a friend, and upon a review of all the moving considerations, might not have entered its order of deportation before giving the alien an opportunity to have a petition for a pardon presented to the Governor of the State where she has spent practically her entire life. Pardon by the Chief Executive of the State for either conviction would remove the ground for her deportability. 8 U.S.C.A. § 155(a).

It would seem that a just disposition of this case would call for the entry of a conditional order of discharge, to be effective only in case the Immigration and Naturalization Service should fail to give the petitioner a hearing within a reasonable time, which would appear to be sixty days, at which hearing she would have an opportunity to be represented by legal counsel or by a friend, and be fully advised concerning the consequences of the deportation proceedings. Compare: Exedahtelos v. Fluckey, Immigration Inspector, 6 Cir., 54 F.2d 858; United States ex rel. Zaffarano v. Corsi, Commissioner of Immigration, 2 Cir., 63 F.2d 757. Such an order, on notice, may be presented for signature.

---

[1] Sec. 95.2 Sub. Sec. (b) (3) A party to a case may be represented by any reputable individual of good moral character, whether or not admitted to practice in accordance with Sec. 95.4, if such individual is appearing without monetary or other material remuneration and files a written declaration to that effect, and if such representation is permitted by the officer in charge of the office having the case under consideration, the Commissioner, or the Board.

Sec. 150.6 Sub. Sec. (a) After the alien has been taken into custody under a warrant of arrest and has been given a reasonable time to arrange for his defense, including, if desired, representation by counsel, * * * the alien shall be granted a hearing to determine whether he is subject to deportation on the charges stated in the warrant of arrest.

Sec. 150.6 Sub. Sec. (c) At the beginning of a hearing under a warrant of arrest, the presiding inspector shall (1) permit the alien to inspect the warrant of arrest and inform him of the charges contained therein by repeating them verbatim and explaining them in language which will clearly convey to the alien the nature of the charges he must answer; (2) apprise the alien, if not represented by counsel, that he may be so represented if he so desires and require him to state then and there for the record whether he desires counsel.