**UNITED STATES ex rel. IODICE v. WIXON, Acting Commissioner of Immigration.**

No. 285.

Circuit Court of Appeals, Second Circuit.

March 7, 1932.

Julia Waisman, of New York City, for relator-appellant.

George Z. Medalie, U. S. Atty., of New York City (Harry G. Herman, Asst. U. S. Atty., of New York City, of counsel), for respondent-appellee.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

On July 5, 1930, Gennaro Iodice, the alien who is the relator appellant, arrived at the port of New York with a passport issued at New York by the Italian consul on October 15, 1929, and a re-entry permit issued by the Commissioner General of Immigration and approved by the Secretary of Labor on August 28, 1929. The Board of Special Inquiry at Ellis Island examined him. His re-entry permit was held to have been fraudulently obtained, and he was excluded because he had no immigration quota visa.

The relator was an Italian who claimed to have first come to this country in March, 1913, as an 11 year old boy on the steamship Venetzia, and to have gone to West Virginia, where he worked with other Italians in railroad camps for seven years. Then he went to New York, where he lived for five years. Then he returned to West Virginia. He left

the United States to return to Italy for a visit in October, 1929. A notary public named Nicolas Fontano testified that the relator came to his office in New York in August, 1929, to make the application for his re-entry permit and that he received the permit about fifteen days later.

The Board of Special Inquiry found that he could not speak English very well, and the manifest of the Venetzia for the voyage on which it arrived at New York on March 21, 1913, showed as one of the passengers "one Giovannia Iodice, aged 17 or 11, able to read and write, occupation sailor, native of Ponza, Italy, where he has father Guiseppe Iodice. * > * " The relator testified that his middle name was Giovanni, and that he had a cousin by the same name. The testimony of the relator that he had spent all of his time in this country with Italians was a reasonable explanation of the fact that he spoke broken English. The manifest of the Venetzia certainly did not refute, although it did not entirely support, his claim that he first came here as a boy of 11 in 1913. The identification of the relator by the notary public as the man who applied through him for the re-entry permit in 1929 was positive and uncontradicted.

What evidently turned the decision against this man was a letter from the American Consul General at Naples. He had investigated to the extent at least of receiving a letter from "the authorities of the Town of Ponza," wherein it was reported that Gennaro Iodice was there until some time in 1923 or 1924, when he went to America; that he returned in 1929, married, and went back to the United States after five or six months. That this letter was the merest hearsay is plain. We need not say it was not to be considered by the Board, but the danger of confusing this relator and his cousin of the same name was so apparent that, if the letter from Ponza is treated as the opinion of the writer as to the facts, it is accorded all the weight to which it is entitled. The action of the Secretary of Labor in approving a re-entry permit for this alien was an official act that is presumed to have been done lawfully until the contrary is made to appear, and so was the action of the Commissioner General in issuing the permit. He had to find that the alien had been legally admitted to the United States. 8 USCA § 210 (b). It is true that the permit itself had no effect except to show that the alien to whom it was issued was returning from a temporary visit abroad, 8 USCA § 210 (f), but that was enough to give him the status of a nonquota immigrant, 8 USCA § 204 (b). In the absence of any proof that this re-entry permit had been obtained through fraud, failure to give it the force and effect accorded to it by the statute was arbitrary and capricious action which made the proceedings, which culminated in his exclusion because he had no quota visa, unfair.

Order reversed.